**LOCAL UNION NO. 445, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.**

No. 71 Civ. 2796.

United States District Court, S. D. New York, Civil Division.

Feb. 1, 1974.

Friedlander, Gaines, Ruttenberg & Goetz, New York City, by Joseph S. Rosenthal, New York City, of counsel, for plaintiff.

Cohen, Weiss & Simon, New York City, by Samuel J. Cohen, New York City, of counsel, for defendant.

OPINION

WHITMAN KNAPP, District Judge.

This action was brought by a Teamsters local under § 301(a) of the Labor Management Relations Act against the Teamsters International to redress alleged breaches by the International of (1) its Constitution and (2) its duty fairly to represent its members in connection with its negotiation in 1971 of a

National Construction Agreement with various contractors. On January 31, 1973, this court on cross-motions for summary judgment found that no breach of the Constitution had occurred, but deferred decision on the question of fair representation pending the completion of plaintiff's discovery. Discovery now having been completed, the cross-motions have been renewed.

In its earlier opinion, this court found in substance that the negotiation and ratification of the nationwide contract was not ultra vires under the International Constitution; we held that the amendment of that Constitution to permit the ratification procedures here employed had been lawful and that under those procedures the nationwide contract had been duly ratified by a majority of the locals affected by it. The remaining question was described as whether the International had nevertheless acted in bad faith, arbitrarily or discriminatorily vis-a-vis plaintiff in its negotiation of the contract. By that, the court meant that while the International had the power to negotiate a national agreement, it did not have the power to achieve it by, for example, sacrificing plaintiff's rights for no bona fide objective of the International union as a whole.

The deposition of Thomas Owens, Director of the Building Materials and Construction Division of the International, which is relied upon by plaintiff on this motion, does not suggest that any bad faith, arbitrariness or discrimination was engaged in by defendant during the course of its preparation of the national agreement. Instead it establishes at most that the International did propose contract terms in some respects less favorable to Local 445 than comparable terms Local 445 had previously been able to achieve for itself in bargaining on its own with some of the signatory contractors.

The deposition further reflects that the Policy Committee of the International met in Scottsdale, Arizona in January, 1971 to draft the proposed national agreement and sought suggestions on the subject from the affected locals. Mr. Owens testified, however, that a document submitted by Local 445 was not considered by the Policy Committee as a "proposal."

Thus Mr. Owens testified that:

"It is not a proposal. It was a comparison or what they said was a comparison of the Local 445 Agreement with the National Construction Agreement, but it was never submitted as a proposal at the Scottsdale meeting.

Local 445 made no proposals at the session in Scottsdale to the agreement . . . They (Local 445) did not submit this document as a proposal to that National Construction Agreement. . . . It was submitted on the basis that this is the reason we should not have a National Construction Agreement. . . ." T75 et seq.

Mr. Owens' testimony is somewhat equivocal as to the degree of attention paid by the Policy Committee to the document submitted by Local 445. However, the Court has examined it as well as proposals submitted to the Committee by other locals, and cannot quarrel with the conclusion that it offered no constructive suggestions for improving a *national* Construction Agreement. On the contrary, it appears to be exactly what Mr. Owens said it was, *i. e.,* an argument that there should be no national contract at all. The document suggests amendment of virtually every clause to provide, in effect, for compliance with the respective wishes of each affected local. Such amendments would obviously destroy completely the efficacy of a national contract.

Thus it was not unreasonable for the Policy Committee to treat Local 445's document not as a proposal to modify the contemplated national contract, but as an argument that the whole idea of a national contract be rejected in defiance of the desires of a majority of the affected locals.

In contrast, the proposals submitted by other locals accept the basic principle

of nationwide uniformity of position, but argue for various modifications in the contractual provisions under consideration. The court will accordingly draw no inference of bad faith from the refusal of the Policy Committee to consider Local 445's "proposal" for presentation to the employers with whom it was negotiating.

The court having rejected plaintiff's contentions that (1) the national agreement per se is illegal, and (2) the International acted in bad faith by failing to adopt Local 445's "proposals", there remains plaintiff's final contention that a prima facie case of bad faith has been established by virtue of defendant's failure to explain—at the deposition or otherwise—why it ultimately accepted a national agreement less favorable to Local 445 than might have been possible. The court must reject this contention as well, for the reason that in its view a multi-local contract, by its very nature will naturally entail some sacrifices for particular locals in return for gains of other, weaker locals. In other words, the decision by the International Union as a whole that there be a nationwide contract is in itself an explanation of the fact that some sacrifices were required of Local 445.

Lest it appear that we are, in effect, precluding claims of unfair representation in connection with multi-local contracts, we again emphasize that were any facts presented to suggest that defendant had deliberately sacrificed any interests of plaintiff for a purpose other than to advance the general good of the International Union as a whole, we would set the matter down for trial. We are also fully cognizant of the Supreme Court's admonition in Czosek v. O'Mara (1970) 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21, that complaints alleging breach of duty of fair representation not be dismissed unless it appear beyond doubt that plaintiffs cannot state good causes of action. But on the present state of the record it does appear to be beyond doubt that plaintiff has no case.

Cf. Bowlin v. UAW (D.Tenn.1971) 72 LRRM 2909.

In light of the above disposition, there is no need to pass on the additional ground for dismissal urged, namely plaintiff's alleged failure to exhaust its internal remedies pursuant to Section 4(a), Article XVI of the union Constitution. But we do observe that (1) the opportunity for such exhaustion no longer exists, and (2) it appears to be by no means clear that the exhaustion doctrine discussed in Vaca v. Sipes (1967) 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, has any applicability to the species of "unfair representation" here involved.

Defendant's motion for summary judgment is granted and the complaint dismissed.

So ordered.